[No. 4856. Decided September 21, 1904.]

CHARLES JAMES, *Respondent,* v. LE ROY JAMES, *Appellant.*[1]

APPEAL—NOTICE—SUFFICIENCY. A notice of appeal reciting that the party "had appealed," instead of that the party "appeals," as provided by Bal. Code, § 6503, is sufficient to effect the appeal, in view of Pierce's Code, § 1066, providing that no appeal shall be dismissed for defects in the notice.

APPEAL—BRIEFS—ASSIGNMENT OF ERRORS. An appeal will not be dismissed for failure to assign errors, where the only question presented is whether the complaint states a cause of action, and that is clearly stated in the brief.

PLEADINGS—DEMURRER—LEGAL CAPACITY TO SUE—ACTION TO QUIET TITLE—WAIVER OF DEFECT. In an action brought by a surviving husband to quiet his title to community real estate, in which it appears from the complaint that one of the defendants claims an interest as an heir of the deceased wife, in and to her undivided one-half of the estate, an objection that the other heirs and not the plaintiff are the persons interested, relates to the capacity of the plaintiff to sue, and is waived unless raised by special demurrer on that ground, a general demurrer not being sufficient.

[1]Reported in 77 Pac. 1082.

O

ADOPTION—VALIDITY—FALSE REPRESENTATIONS—LAWS OF FOR-
EIGN STATE.   An adoption of a child in the state of Iowa, in-
duced by the false representations of the child's father that its
mother was dead, does not render the adoption illegal, in the ab-
sence of proof of the laws of Iowa to that effect, since the rules
in this state would then apply, and they do not so provide.

SAME—CONSENT OF THE MOTHER.   Under the laws of this
state the consent of the mother to the adoption of a child is
necessary only when she is living with her husband or has the
custody of the child, and a complaint alleging merely that an
adoption was without the consent of the mother is, therefore, in-
sufficient to show the invalidity of the adoption.

Appeal from a judgment of the superior court for Spo-
kane county, Kennan, J., entered June 4, 1903, in favor
of the plaintiff, upon overruling a demurrer to the com-
plaint, in an action to quiet title.   Reversed.

*Hartson & Holloway,* for appellant.

*Nash & Nash,* for respondent.

FULLERTON, C. J.—The respondent, as plaintiff in the
court below, brought this action against Nathan O'Dell,
Emma O'Dell, Margaret A. James, Le Roy James, Bertha
James, Mabel E. James, and Walter W. James, as defend-
ants, to quiet title in himself to certain real property
situated in the county of Spokane.   Le Roy James appeals
from a judgment quieting title against his interests.

The respondent moves to dismiss this appeal, assigning
as reasons therefor that the notice given is insufficient to
effect an appeal, and that the opening brief contains no
assignment of errors.   That part of the notice to which
objection is made is as follows:   "You will please take
notice that the defendant Le Roy James has appealed,"
etc., from the judgment entered.   The argument is that a
notice that a party "has appealed" from a judgment is not
a notice that he "appeals" from that judgment, and hence
there is no notice of appeal in the record.   If the statute

relating to the giving of the notice to appeal stood alone, doubtless the objection urged would be sound, inasmuch as that statute provides that a party desiring to appeal from a judgment or order of the superior court may serve on the prevailing party a written notice "that he appeals from such judgment or order." Bal. Code, § 6503. But the legislature later enacted that "no appeal shall be dismissed for any informality or defect in the notice of appeal, . . ." Laws 1899, p. 79; Pierce's Code, § 1066. And since then we have held that the words, "intends to appeal," "will appeal," or "give notice of their application to appeal," are equivalent to and have the same effect as, the more direct phraseology of the statute—that is, each will effect an appeal. *Ranahan v. Gibbons,* 23 Wash. 255, 62 Pac. 773; *In re Murphy's Estate,* 26 Wash. 222, 66 Pac. 424; *Brown v. Calloway,* 34 Wash. 175, 75 Pac. 630. And of course if the phrases above cited are sufficient to effect the appeal, the words "has appealed" will likewise perform the same office. Neither is the second objection well taken. The only question presented by the record or discussed in the brief is the question, does the complaint state facts sufficient to constitute a cause of action? and this is clearly stated in the brief. The fact that it was not formally assigned as the error relied upon, is not material.

In his complaint the respondent alleged, that he was the owner in fee of the land above mentioned; that he acquired the same under and by virtue of the homestead laws of the United States; that in 1888, the time he settled upon the same and filed his right of homestead, he was a married man; that his wife was then living with him, and that she continued to live with him and reside upon the land, until her death in February, 1891; that at the time of her

42-35 WASH.

death she left surviving her, and as her heirs at law, Emma
O'Dell, Margaret A. James, Bertha James, Mabel E.
James, and Walter W. James, children of herself and the
respondent, some of whom were then and now are minors,
and that said children continued to reside with him upon
the land, from the time of their mother's death until he
proved up on the same and obtained a patent therefor from
the United States, in 1894; that Le Roy James, the ap-
pellant, is not the son of the respondent nor of his deceased
wife, but that his name was formerly Charles Le Roy Rum-
baugh, and is no kin or relation to the respondent or his
deceased wife, but plaintiff alleges the facts to be in regard
to Le Roy James:

"That in the state of Iowa, in the county of Jasper, one
Newton Melville Rumbaugh, the father of said Charles
Le Roy Rumbaugh, herein called Le Roy James, repre-
sented to the plaintiff and his deceased wife Margaret, that
he was a widower and that the mother of said boy was dead
at the time aforesaid, to wit, in March, 1888, and requested
the said plaintiff and his said wife, now deceased, to adopt
the said Charles Le Roy Rumbaugh, and that the said
plaintiff and his said wife, relying upon the representations
of said Newton Melville Rumbaugh, that his wife, the
mother of said boy, was then dead, did adopt, under the
laws of the state of Iowa, the said Charles Le Roy Rum-
baugh, under the name of Le Roy James, into his family,
but the said plaintiff alleges that in truth and in fact the
mother of said boy was not dead, as was represented by the
said father, Newton Melville Rumbaugh, but was still liv-
ing, and plaintiff alleges that the whole adoption under
the said laws was illegal and was void and of no effect and
conferred no rights whatever upon the said boy in regard
to the property of the said plaintiff herein, and if plaintiff
had known that the said mother of said boy was living or
in existence, he would not have adopted said child as afore-
said.    That in the fall of said year, 1888, during the month
of September, the said plaintiff, with his said wife and

children, left the state of Iowa and emigrated to the then territory of Washington, bringing said Le Roy James with them as a part of said family; and that in October of that year he filed his homestead on said land in question, as set forth in paragraph two of said complaint.

"Plaintiff further alleges that the said Le Roy James continued to live in the family of said plaintiff until he became a wayward and at last incorrigible, and some time in the month of October, 1893, upon an examination had by the authorities of Spokane, he was committed to the state reform school at Chehalis, Washington, as being an incorrigible boy, and he remained there for something like two years in said institution for the reformation of wayward boys, when the mother of said boy, who appeared to be then living in Whatcom, Washington, appeared at said state reform school, and demanded said Le Roy James, claiming him as her son, and finally took him from said reform school, and to her home in said Whatcom, Washington, where he was for a year or more. That said plaintiff alleges that he was entirely ignorant of her whereabouts and supposed that said boy had no mother and supposed that the representations of the father made at the time of the adoption were true as therein stated. That after the mother had taken charge and control of said boy, as aforesaid, she informed the plaintiff of her identity as the mother of said boy claiming the right and the custody of him, and the said plaintiff then and there offered, and did, relinquish all claim and right to the custody and control of said child, and plaintiff avers that he had had no charge or control over the said boy since said time, and avers that he has no right or claim to the said boy or the custody of him. Plaintiff further alleges that he never took any steps in the territory of Washington, or in the state of Washington, to adopt said boy into his family except in the state of Iowa, as aforesaid. Plaintiff further alleges that the said adoption of the said boy in the state of Iowa, as aforesaid, in consequence of the false and fraudulent representations of the father of said boy in regard to the death of the said mother, was void under the laws of the state of Iowa and that said boy acquired no

rights to property or otherwise by virtue of the said adoption, even in the state of Iowa. Plaintiff further alleges that said boy has no rights of property, either as the heir of plaintiff, or of his deceased wife in the state of Iowa, in the territory of Washington, or in the state of Washington. That the laws governing the adoption of children are not at all similar in the state of Iowa or the territory of Washington or state of Washington. That a different mode and a different tribunal is resorted to for adoption and even if the adoption of the said boy was in any way legal in the state of Iowa it has no force or effect in the territory of Washington, or the state of Washington."

The respondent further alleges that the defendants are claiming some right or interest in, or title to the property, but that they have no such right or interest, and he prays that his title to the premises be quieted. To the complaint the defendant Le Roy James filed a general demurrer, which the trial court overruled. He thereupon refused to plead further, and judgment was entered against him in accordance with the prayer of the complaint.

The appellant first contends that the allegations of the complaint, in reference to the manner title was acquired to the real property in question, show that the heirs at law of the deceased wife of the appellant have an interest in an undivided half of the property, under the rule of the case of *Ahern v. Ahern,* 31 Wash. 334, 71 Pac. 1023, and, as the respondent's interests are confined to the other undivided half, it is of no concern to him who claim to be heirs at law of the first. But this, it seems to us, is only another way of saying that the respondent has no legal capacity to sue, and to that objection it is a sufficient answer to say that appellant did not demur to the complaint on that ground. The demurrer filed, as we have said, was a general demurrer, one going to the sufficiency of the complaint to state a cause of action, and such a de-

murrer does not raise the question of the capacity of the plaintiff to maintain the action. The want of legal capacity to sue is made a special ground of demurrer by the statute, and, to raise it by demurrer, it must be pointed out specially.

The question then turns on the allegations concerning the adoption of the appellant. The respondent, it will be noticed, after alleging that he did adopt the appellant into his family under the laws of the state of Iowa, avers that such adoption was void and of no effect because of certain matters which he particularizes. But it seems to us that none of these could avoid the adoption proceedings. That the father of the boy, at the time of the adoption, made false statements concerning the death of the mother, or that the respondent would not have adopted the boy had he known that the mother was living, or that the boy afterwards became incorrigible and was sent to the reform school and was subsequently taken therefrom by his natural mother, or that the plaintiff did not subsequently, in the territory or state of Washington, take steps to adopt the boy, does not render the adoption had in Iowa illegal, in so far as we are informed as to the laws of that state. True, the appellant alleges in many places in his complaint that the adoption was void under the laws of Iowa, but this is only his conclusion from the facts alleged. He does not set out the laws of that state showing wherein they render the adoption void and of no effect, and this court must apply to the facts the rules of law of this state, and applying such rules we do not find the facts sufficient to avoid the adoption.

We have not overlooked the contention of the plaintiff to the effect that the consent of the mother is a prerequisite to a valid adoption under the laws of this state, and that the complaint sufficiently shows that there was no consent

of the mother to the adoption of the appellant. But consent of the mother of a child to its adoption by another is only necessary when she is living with her husband, or has custody and control of her child; her consent is not necessary when she is living separate and apart from her husband, and the husband has the charge and control of the child. The complaint does not negative this condition, or show that the mother's consent was necessary.

As, under the laws of this state, an adopted child is the legal heir of his adopters to the same extent he would be if born to them in lawful wedlock, the appellant, under the facts shown by the complaint, is the lawful heir of the deceased wife of the appellant, and as such has an interest in the property in suit. *Ahern v. Ahern, supra.* The court therefor erred in overruling his demurrer to the complaint.

The judgment appealed from will be reversed, and the cause remanded, with instructions to sustain the demurrer to the complaint, with leave to the respondent to amend, if he so desires.

MOUNT, DUNBAR, and ANDERS, JJ., concur.